Aldon L. Bolanos, Esq., SBN. 233915
925 "G" Street
Sacramento, CA 95814
Ph.  916.446.2800
fx.  916.446.2828
www.aldonlaw.com

Attorneys for Plaintiff
EDISON MAYO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDISON MAYO,<br><br>          Plaintiff,<br><br>          vs.<br><br>RECYCLE TO CONSERVE,<br><br>Defendant. | Case No.  2:10-CV-00629-WBS-EFB<br><br>Plaintiff Edison Mayo's Trial Brief<br><br>Trial Date:  November 1, 2011<br>Time:        9:00 a.m.<br>CTRM:        5<br><br>Hon. William B. Schubb |

**I.   Introduction**

   Plaintiff Edison Mayo ("Mayo") files this trial brief pursuant to the court's pre-trial order and Local Rule 285.

**II.  Statement of Facts**

   Plaintiff Edison Mayo is a black man.  He was a truck driver for defendant from 1997 through October 30, 2009, when he was terminated.  He was the only black driver for defendant at its Stockton, California, location.  Defendant claims it terminated plaintiff because he was involved in a

1

second driving accident in violation of defendant's accident policy.

In 2006, Defendant hired a white mechanic, Elwood Lindsey. Lindsey was responsible for servicing plaintiff's truck, and called him names and displayed virulent race-based animus, by calling plaintiff names such as "coon" and "coon-ass," dropping chains and other parts at plaintiff's feet rather than handing them to him, and "cussing him out" and chasing him out of the repair shop, throwing tools at plaintiff, and slamming doors behind plaintiff.

Lindsey also repeatedly referred to plaintiff as a "lazy, no good nigger."

Plaintiff complained repeatedly about Lindsey to the shop manager, Sean Odahl, but Odahl did nothing, instead telling Mayo that Lindsey was just "that way" and to "avoid him." Odahl and Lindsey were close friends, and could often be observed in personal conference in the yard during work hours.

Plaintiff also repeatedly reported to Odahl that Lindsey was not servicing his (plaintiff's) truck properly. Odahl failed to take any statement from plaintiff, and also failed to take any other action against Lindsey. Instead, he grew "annoyed" by the constant complaints by Mayo.

In addition to his termination, plaintiff points to other instances in which Odahl discriminated against him based on race during the course of his employment. Plaintiff claims that Lindsey and Odahl "tried to blame [plaintiff] for allowing the truck to overheat and not

bringing it in sooner." Also, Odahl assigned the Caucasian drivers better routes and better trucks.

In August of 2005, defendant implemented a policy related to accidents. It reads: "Simply stated, if you are involved in two (2) accidents involving property damage or injury while operating company equipment, your employment may be terminated. This is in addition to the existing "zero-tolerance" drug policy, which includes the provision that a positive result from a single post-accident drug test can result in termination as well."

While the policy does not appear to expressly contemplate whether an accident was a fault or no-fault accident, the "may" in the policy's language suggests that termination was permissive following two accidents.

In June of 2007, plaintiff was involved in an accident in which "the box" fell off of his truck when he turned left at a traffic light. Plaintiff testified that he did not think that after the 2007 accident a second accident could result in his termination. Plaintiff's reasons were that the accident was not his fault because "the box" was not appropriate for the truck and "there were other people that had plenty of accidents that were not terminated."

On October 13, 2009, plaintiff was involved in a second accident in which the "tractor jackknifed into the attached trailer." The accident occurred when plaintiff was driving below the speed limit, at twenty-five miles per hour, and breaking as he approached a red light in wet or

3

1  rainy conditions. Plaintiff's position is the accident was
2  not his fault because the breaks were faulty and locked
3  when he pressed them.
4      Plaintiff refused to drive the truck back to the
5  facility and Lindsey was dispatched to inspect the truck
6  and drive it back. Plaintiff claims that a week before the
7  accident Lindsey had worked on the truck and had told
8  plaintiff everything was "fine." As evidence that the
9  accident was not his fault and that the breaks were faulty,
10 plaintiff states that he was told by another driver that
11 the "sub-hauler" who assumed that route and truck following
12 plaintiff's accident refused to drive the truck until the
13 breaks were fixed, and they were then fixed. Plaintiff and
14 the other drivers had also previously discussed that the
15 truck had problems.
16     Plaintiff states that when he returned to the facility
17 on the day of the second accident Odahl told plaintiff
18 "that it was likely the case that the truck just
19 malfunctioned, and that the brakes locked up." Nonetheless,
20 Odahl in his Supervisor's Incident Investigation Report
21 places the blame on Plaintiff.
22     Plaintiff claims that the accident policy was applied
23 differently to him than to other drivers. Plaintiff's
24 is "personally aware" of four accidents involving Caucasian
25 driver Ralph Lantz and a failed drug test following one of
26 them, four accidents involving Caucasian driver Kevin
27 Christian, including one in which Christian "ran his truck
28 into [plaintiff's] vehicle," and several accidents

4

involving Caucasian mechanic Lindsey driving defendant's trucks. On one occasion, Lindsey "backed into [plaintiff] with his truck into [plaintiff's] company truck." Plaintiff claims that defendant did not even take a statement from him following the two accidents in which his vehicle was hit. Odahl disagrees that the policy was applied unevenly and states that only Lantz was involved in one accident following implementation of the policy.

### III. Admissions and Stipulations

None.

### IV.  Points of Law

Plaintiff has the burden of making a prima facie case for race discrimination under Title VII by establishing that 1) he is a member of a protected class; 2) he was qualified for his position; 3) he experienced an adverse employment action; and 4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F. 3d 599, 603 (9th Cir. 2004).

The plaintiff must then show that whatever purportedly legitimate, non-discriminatory basis the defense might claim as the reason for the termination, is in all actuality a mere pretext for racial discrimination. This can be shown by the fact that the policy was applied

5

differently to whites, and that plaintiff was allowed to driver for over two weeks more after the accident.  And he had to train a new driver.  Indeed, defendant never even suggested during this time that plaintiff could or would be terminated for violating this policy.

In addition, if the defense claims it had "no choice" but to terminate plaintiff, it would be an overstatement sounding in pretext.  R*osales v. Career Sys. Develop. Corp.*, No. Civ. 08-1383 WBS RJM, 2009 WL 3644867, at *12 (E.D. Cal. Nov. 2, 2009).  The accident policy is discretionary.

**V.   Disputed Legal Issues and Motions In Limine**

None.

Respectfully Submitted,

Dated: October 17, 2011

/s/ *Aldon L. Bolanos, Esq.*
Aldon L. Bolanos, Esq.
Attorney for Plaintiff
Edison Mayo